# EXHIBIT B

## NON-DISCLOSURE AGREEMENT

**COMPANY**: _____

**STATE OF ORGANIZATION**: _____

**ADDRESS FOR NOTICES:** _____

THIS NON-DISCLOSURE AGREEMENT (this "<u>Agreement</u>") is made by and between Netsolace, Inc., a Delaware stock corporation having a principal place of business at 980 Hammond Drive NE, #900, Building 2, 10th Floor, Atlanta, Georgia 30328 ("NI") and Company and entered into and to be effective as of the last date signed below  (the "<u>Effective Date</u>").

In consideration of the mutual promises and covenants contained in this Agreement and the mutual disclosure of confidential information to each other, the parties hereto agree as follows:

1.      <u>Confidential Information</u>.

a.      "Confidential Information" means nonpublic information that a party to this Agreement ("<u>Disclosing Party</u>") designates as being confidential to the party that receives such information ("<u>Receiving Party</u>") or which, under the circumstances surrounding disclosure ought to be treated as confidential by Receiving Party.  Company acknowledges and agrees that all information disclosed by NI, or obtained, discovered or created by Company as a result of any discussions and/or any formal engagement between the parties, including without limitation any information related to NI's affiliates, subsidiaries, and its and their respective owners, shareholders, members, and managers, shall be Confidential Information, whether or not so designated.  Further, Confidential Information includes, without limitation, any and all information in tangible and intangible form relating to and/or including Disclosing Party's released or unreleased software, know-how, inventions, techniques, processes, algorithms, software programs, schematics, designs, product plans, contracts, customer lists, financial information, financial statements, business policies or practices, pricing information, the terms and conditions of any proposed (or actual) license agreement or other agreement concerning Disclosing Party products or services, negotiations, the marketing or promotion of any Disclosing Party products or services, and information received from others that Disclosing Party is obligated to treat as confidential.

b.      Confidential Information shall not include any information, however designated, that: (i) is or subsequently becomes generally publicly available without Receiving Party's breach of any obligation owed Disclosing Party; (ii) became known to Receiving Party prior to Disclosing Party's disclosure of such information to Receiving Party pursuant to the terms of this Agreement; (iii) became known to Receiving Party from a source other than Disclosing Party other than by the breach of an obligation of confidentiality owed to Disclosing Party; or (iv) is independently developed by Receiving Party.

2.      <u>Restrictions</u>.

a.      Receiving Party shall not disclose any Confidential Information to third parties until such time as all Confidential Information of Disclosing Party disclosed hereunder becomes publicly known and made generally available through no action or inaction of Receiving Party.  However, Receiving Party may disclose Confidential Information of Disclosing Party in accordance with a judicial or other governmental order, provided that Receiving Party either (i) gives Disclosing Party reasonable notice prior to such disclosure to allow Disclosing Party a reasonable opportunity to seek a protective order or equivalent, or (ii) obtains written assurance from the applicable judicial or governmental entity that it will afford Confidential Information the highest level of protection afforded under applicable law or regulation.  Notwithstanding the foregoing, Receiving Party shall not disclose any computer source code that contains Confidential Information of Disclosing Party in accordance with a judicial or other governmental order unless it complies with the requirement set forth in sub section (i) of this Section 2.a.

b.      Receiving Party shall take reasonable security precautions, at least as great as the precautions it takes to protect its own Confidential Information, to keep confidential the Confidential Information.  Receiving Party may disclose Confidential Information only to Receiving Party's employees on a need-to-know basis.  Receiving Party will have executed or shall execute appropriate written agreements with its employees sufficient to enable Receiving Party to enforce all the provisions of this Agreement and Receiving Party shall provide a copy of such agreement upon request to Disclosing Party.

c.      Receiving Party agrees to use Confidential Information for the sole purpose of evaluating certain products and/or services solely in connection with NI's and Company's potential business relationship.  Confidential Information may not be otherwise used, disclosed, reproduced, summarized or distributed.  Receiving Party agrees to segregate all Confidential Information from the confidential information and materials of Receiving Party and others in order to prevent commingling.  Notwithstanding anything to the contrary set forth herein, neither party shall have any obligation to disclose Confidential Information.

d.      Receiving Party may not reverse engineer, decompile or disassemble any software disclosed to Receiving Party.

e.      Receiving Party will not alter or delete any proprietary legends or marking on Confidential Information furnished to Receiving Party.

3.      <u>Rights and Remedies</u>.

a.      Receiving Party shall notify Disclosing Party immediately upon discovery of any unauthorized use or disclosure of Confidential Information or any other breach of this Agreement by Receiving Party or its employees, and will cooperate with Disclosing Party in every reasonable way to help Disclosing Party regain possession of Confidential Information and prevent its further unauthorized use or disclosure.

b.      Receiving Party shall immediately return all originals, copies, reproductions and summaries of Confidential Information at Disclosing Party's request, or at Disclosing Party's option,

certify destruction of the same, regardless of whether such documentation was furnished to Receiving Party by Disclosing Party or was made by Disclosing Party.

c.     Receiving Party acknowledges that monetary damages may not be a sufficient remedy for  unauthorized disclosure of Confidential Information and that Disclosing Party shall be entitled, without waiving any other rights or remedies, to such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction.

4.     Miscellaneous.

a.     All Confidential Information is and shall remain the property of Disclosing Party.  By disclosing information to Receiving Party, Disclosing Party does not grant any express or implied right or license to Receiving Party to, or under any Disclosing Party, patents, copyrights, trademarks, trade secret information, or other intellectual property.

b.     Nothing herein shall obligate either NI or Company to proceed with any transaction between them, and each party reserves the right, in its sole discretion, to terminate the discussions contemplated by this Agreement.

c.     ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS."  NEITHER PARTY MAKES ANY WARRANTIES, EXPRESS, IMPLIED OR OTHERWISE, REGARDING ITS ACCURACY, COMPLETENESS OR PERFORMANCE.

d.     No contract or agreement providing for the potential business relationship between the Receiving Party and Disclosing Party shall be deemed to exist unless and until a definitive transaction agreement has been executed by and delivered with respect thereto to all parties.  Unless and until such a definitive agreement has been executed and delivered, no party nor any stockholders, members or owners of a party shall have any legal obligation of any kind whatsoever with respect to the potential business relationship by virtue of this Agreement or any other written or oral expression with respect to the potential business relationship except, in the case of this Agreement, for the matters specifically agreed to herein.  Each party shall be free to conduct or terminate the process whereby it may enter into the potential business relationship as such party in its sole discretion shall determine.  Neither this Section d. nor any other provision in this Agreement can be waived or amended except by written consent of the applicable parties.

e.     This Agreement and all claims whatsoever arising from the parties' relationship will be construed and governed by the laws of the State of Georgia, without regard to its conflict of laws rules.  The parties hereto submit to the exclusive jurisdiction of the state and federal courts in Fulton County, Georgia as the sole forum for resolution of all disputes concerning the parties' rights or obligations under this Agreement or otherwise arising as a result of their relationship.  All remedies provided in this Agreement are cumulative and in addition to any remedy otherwise available under any federal, state, or local law.

f.     Neither Receiving Party nor Disclosing Party shall, directly or indirectly, make or publish any disparaging statements (whether written or oral) regarding the other party, any of its

affiliated companies or businesses, or the affiliates, directors, officers, agents, principal stockholders or customers of any of them.

g.      Subject to the limitations set forth in this Agreement, this Agreement will inure to the benefit of and be binding upon the parties, their successors and assigns.  The affiliates and subsidiaries of NI are express third party beneficiaries of this Agreement.  Company shall not assign its rights or delegate its duties under this Agreement without the prior written consent of NI and any such attempt in violation of the foregoing shall be null and void.

h.      If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect.

i.      All obligations created by this Agreement shall survive change or termination of any business relationship.

j.      Written notice regarding this agreement or any agreement that may result, may be given to the other party at the address listed at the beginning of this Agreement or to such other address as may be designated by a party by giving written notice to the other party pursuant to this Section 4.j.

k.      This copy of this Agreement may not be altered except to complete any blanks in the introductory paragraph, address for notice or the signature blocks below (e.g., signature or date), and any other modifications, additions, or other alterations are void and not part of this Agreement.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof.  It shall not be modified except by a written agreement dated subsequent to the date of this Agreement and signed by both parties.  None of the provisions of this Agreement shall be deemed to have been waived by any act or acquiescence on the part of Disclosing Party, its agents, or employees, but only by an instrument in writing signed by an authorized officer of Disclosing Party. No waiver of any provision of this Agreement shall constitute a waiver of any other provision(s) or of the same provision on another occasion.

l.      This Agreement may be executed in separate counterparts, each of which when executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.  Any signature delivered by a party by facsimile transmission or electronic delivery shall be deemed to be an original signature hereto.  In pleading or proving this Agreement, it will not be necessary to produce or account for more than one such counterpart.

*Balance of Page Left Intentionally Blank; Signature Page Follows*

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have each caused its duly authorized officers or representatives to be affixed hereto its hand and seal as of the Effective Date.

ACCEPTED AND AGREED TO BY:
NETSOLACE, INC.

By:   *Somia Farid Silber*

Name: Somia Farid Silber

Title:    Authorized Signatory

Date:    5/20/2019

ACCEPTED AND AGREED TO BY:
COMPANY:

By:   *David Henry*

Name:

Title:    Authorized Signatory

Date: