# EXHIBIT E

**SERVICES ORDER FORM**

| Customer: ▮▮▮▮ | | Contact: ▮▮▮▮▮▮ |
|---|---|---|
| Address: ▮▮▮▮▮▮▮▮▮▮ | | Phone: ▮▮▮▮▮ |
| ▮▮▮▮▮▮▮ | | E-Mail: ▮▮▮▮▮▮▮▮ |
| **Store Number(s):** ▮▮ | | |

**Services**: The Company will provide the infrastructure and support to sell personalized products (the "Service(s)").

| | |
|---|---|
| **Services Fees**: ▮▮▮▮▮▮▮▮ payable on the first day of each month (prorated in accordance with the number of days remaining in the initial month of activation), subject to the terms of Section 3 herein.<br><br>**Card Fees**: Company shall charge ▮▮▮▮ to Customer (includes ink, cardstock, envelope, and content), payable in advance, subject to the terms of Section 3 herein.<br><br>**Website Integration Fees**: ▮▮▮▮▮▮▮▮ Additional website integrations will be priced based on the scope of the project. | **Initial service term**: One (1) year<br><br>**Select Greeting Card Printer Payment Plan:**<br>x  **Option 1.** ▮▮▮▮▮▮▮▮ payable in the same manner as the Services Fee<br><br>o  **Option 2.** ▮▮▮▮, initial payment<br><br>**Fee for Other Personalized Products**: To be determined |

**SERVICES AGREEMENT**

This Services Agreement ("Agreement") is entered into on this __12th__ day of __December__, 2019 (the "Effective Date") between Card Isle Corporation, a Virginia Corporation ("Company"), and the Customer listed above ("Customer").  This Agreement includes and incorporates the above Order Form and the attached Terms and Conditions.  There shall be no force or effect to any different terms of any related purchase order or similar form – which are hereby disclaimed and agreed to be inapplicable - even if signed by the parties after the date hereof.

**Card Isle Corporation:**
By: *David Henry* (DocuSigned, 00503F1C3C8842F...)
Name: David Henry
Title: Sales Manager

By: ▮▮▮▮ (DocuSigned)
Name: ▮▮▮▮
Title: ▮▮▮▮

Sales Manager Notes:
▮▮▮▮▮▮ financing option selected for term of ten months.

**TERMS AND CONDITIONS**

**1. RESTRICTIONS AND RESPONSIBILITIES**
*a.* Customer will not, directly or indirectly: reverse engineer, decompile, disassemble or otherwise attempt to discover the source code, object code or underlying structure, ideas, know-how or algorithms relevant to the Services or any software, documentation or data related to the Services ("Software"); modify, translate, or create derivative works based on the Services or any Software (except to the extent expressly permitted by Company or authorized within the Services); use the Services or any Software for timesharing or service bureau purposes or otherwise for the benefit of a third; or remove any proprietary notices or labels. With respect to any Software that is distributed or provided to Customer for use on Customer premises or devices, Company hereby grants Customer a non-exclusive, non-transferable, non-sublicensable license to use such Software during the Term only in connection with the Services.
*b.* Further, Customer may not remove or export from the United States or actively facilitate or encourage removal or exportation of the Services, Software or anything related thereto, or any direct product thereof in violation of any restrictions, laws or regulations of the United States Department of Commerce, the United States Department of Treasury Office of Foreign Assets Control, or any other United States or foreign agency or authority. As defined in FAR section 2.101, the Software and documentation are "commercial items" and according to DFAR section 252.227-7014(a)(1) and (5) are deemed to be "commercial computer software" and "commercial computer software documentation." Consistent with DFAR section 227.7202 and FAR section 12.212, any use modification, reproduction, release, performance, display, or disclosure of such commercial software or commercial software documentation by the U.S. Government will be governed solely by the terms of this Agreement and will be prohibited except to the extent expressly permitted by the terms of this Agreement.
*c.* The Customers shall be responsible for obtaining and maintaining any equipment and ancillary services needed to connect to, access or otherwise use the Services, including, without limitation, modems, hardware, servers, software, operating systems, networking, web servers and the like (collectively, "Equipment"). The Customer shall also be responsible for maintaining the security of the Equipment, account(s), passwords (including but not limited to administrative and user passwords) and files, and for all uses of Customer accounts or the Equipment with or without the Customer's knowledge or consent.
d. For all products whose manufacture relies in part or full on any Services provided by the Company, materials for these products must be purchased directly from the Company or from sources approved in writing by the Company.
e. The printer provided as part of the Services is owned entirely by the Customer. This printer is covered by the original manufacturer's warranty, and it is the responsibility of the Customer to use and maintain the printer to the manufacturer's specifications. It is the responsibility of the Customer to provide a data connection to the printer sufficient to support the Services. The Company reserves the right to replace the printer at any time with a printer of similar type, quality, and appearance.

**2. CONFIDENTIALITY; PROPRIETARY RIGHTS**
*a.* Each party (the "Receiving Party") understands that the other party (the "Disclosing Party") has disclosed or may disclose business, technical or financial information relating to the Disclosing Party's business (hereinafter referred to as "Proprietary Information" of the Disclosing Party). Proprietary Information of Company includes non-public information regarding features, functionality and performance of the Service. Proprietary Information of Customer includes non-public data provided by Customer to Company to enable the provision of the Services ("Customer Data"). The Receiving Party agrees: (i) to take reasonable precautions to protect such Proprietary Information, and (ii) not to use (except in performance of the Services or as otherwise permitted herein) or divulge to any third person any such Proprietary Information. The Disclosing Party agrees that the foregoing shall not apply with respect to any information after five (5) years following the disclosure thereof or any information that the Receiving Party can document (a) is or becomes generally available to the public, or (b) was in its possession or known by it prior to receipt from the Disclosing Party, or (c) was rightfully disclosed to it without restriction by a third party, or (d) was independently developed without use of any Proprietary Information of the Disclosing Party or (e) is required to be publicly disclosed by law.
*b.* Company shall own and retain all right, title and interest in and to (a) the Services and Software, all improvements, enhancements or modifications thereto, (b) all intellectual property rights related to any of the foregoing.
*c.* Notwithstanding anything to the contrary, Company shall have the right to collect and analyze data and other information relating to the provision, use and performance of various aspects of the Services and related systems and technologies (including, without limitation, information concerning Customer Data and data derived therefrom), and Company will be free (during and after the term hereof) to (i) use such information and data to improve and enhance the Services and for other development, diagnostic and corrective purposes in connection with the Services and

other Company offerings, and (ii) disclose such data solely in aggregate or other de-identified form in connection with its business. No rights or licenses are granted except as expressly set forth herein.

### 3. PAYMENT OF FEES
a. Customer will pay Company the then applicable fees described in the Order Form for the Services in accordance with the terms therein (the "Fees"). Company reserves the right to change the Fees or applicable charges and to institute new charges and Fees at the end of the Initial Service Term or then-current renewal term, upon thirty (30) days prior notice to Customer (which may be sent by email). If Customer believes that Company has billed Customer incorrectly, Customer must contact Company no later than 60 days after the closing date on the first billing statement in which the error or problem appeared, in order to receive an adjustment or credit. Inquiries should be directed to Company's customer support department.
b. Company may choose to bill through an invoice, in which case, full payment for invoices issued in any given month must be received by Company thirty (30) days after the mailing date of the invoice. Unpaid amounts are subject to a finance charge of 1.5% per month on any outstanding balance, or the maximum permitted by law, whichever is lower, plus all expenses of collection and may result in immediate termination of Service. Customer shall be responsible for all taxes associated with Services other than U.S. taxes based on Company's net income.

### 4. TERM AND TERMINATION
a. Subject to earlier termination as provided below, this Agreement is for the Initial Service Term as specified in the Order Form, and shall be automatically renewed for additional periods of the same duration as the Initial Service Term (collectively, the "Term"), unless either party requests termination at least thirty (30) days prior to the end of the then-current term.
b. In addition to any other remedies it may have, either party may also terminate this Agreement upon thirty (30) days' notice (or without notice in the case of nonpayment), if the other party materially breaches any of the terms or conditions of this Agreement. The Customer will pay in full for the Services up to and including the last day on which the Services are provided. All sections of this Agreement which by their nature should survive termination will survive termination, including, without limitation, accrued rights to payment, confidentiality obligations, warranty disclaimers, and limitations of liability.

### 5. WARRANTY AND DISCLAIMER
a. Company shall use commercially reasonable efforts consistent with prevailing industry standards, but in no case less than reasonable commercial standards, to provide the Services to Customer in a manner which minimizes errors and interruptions in the Services. Services may be temporarily unavailable for scheduled maintenance or for unscheduled emergency maintenance, either by Company or by third-party providers, or because of other causes beyond Company's reasonable control, but Company shall use reasonable efforts to provide advance notice in writing or by e-mail to Customer of any scheduled service disruption. HOWEVER, COMPANY DOES NOT WARRANT THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR FREE; NOR DOES IT MAKE ANY WARRANTY AS TO THE RESULTS THAT MAY BE OBTAINED FROM USE OF THE SERVICES. EXCEPT AS EXPRESSLY SET FORTH IN THIS SECTION, THE SERVICES ARE PROVIDED "AS IS" AND COMPANY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

### 7. INDEMNITY
a. Company shall indemnify, defend and hold Customer harmless from losses, liabilities, damages, costs or expenses (including reasonable attorney's fees) ("Claims") arising from any third party Claim alleging infringement by the Service of any United States patent or any copyright or misappropriation of any trade secret, provided Company is promptly notified of any and all threats, Claims and proceedings related thereto and given reasonable assistance and the opportunity to assume sole control over defense and settlement; Company will not be responsible for any settlement it does not approve in writing. The foregoing obligations do not apply with respect to portions or components of the Service (i) not supplied by Company, (ii) made in whole or in part in accordance with Customer specifications, (iii) that are modified after delivery by Company, (iv) combined with other products, processes or materials where the alleged infringement relates to such combination, (v) where Customer continues allegedly infringing activity after being notified thereof or after being informed of modifications that would have avoided the alleged infringement, or (vi) where Customer's use of the Service is not materially in accordance with this Agreement. If, due to a claim of infringement, the Services are held by a court of competent jurisdiction to be or are believed by Company to be infringing, Company may, at its option and sole expense (a) replace or modify the Service to be non-infringing provided that such modification or replacement contains substantially similar features and functionality, (b) obtain for Customer a license to continue using the Service, or (c) if neither of the foregoing is

commercially practicable, terminate this Agreement and Customer's rights hereunder and provide Customer a refund of any prepaid, unused fees for the Service.

### 8. LIMITATION OF LIABILITY

*a.* NOTWITHSTANDING ANYTHING TO THE CONTRARY, THE COMPANY AND ITS SUPPLIERS (INCLUDING BUT NOT LIMITED TO ALL EQUIPMENT AND TECHNOLOGY SUPPLIERS), OFFICERS, AFFILIATES, REPRESENTATIVES, CONTRACTORS AND EMPLOYEES SHALL NOT BE RESPONSIBLE OR LIABLE WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT OR TERMS AND CONDITIONS RELATED THERETO UNDER ANY CONTRACT, NEGLIGENCE, STRICT LIABILITY OR OTHER THEORY: (A) FOR ERROR OR INTERRUPTION OF USE OR FOR LOSS OR INACCURACY OR CORRUPTION OF DATA OR COST OF PROCUREMENT OF SUBSTITUTE GOODS, SERVICES OR TECHNOLOGY OR LOSS OF BUSINESS; OR (B) FOR ANY INDIRECT, EXEMPLARY, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES; IN EACH CASE, WHETHER OR NOT COMPANY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

### 9. MISCELLANEOUS

a. If any provision of this Agreement is found to be unenforceable or invalid, that provision will be limited or eliminated to the minimum extent necessary so that this Agreement will otherwise remain in full force and effect and enforceable.  Either party may transfer and assign any of its rights and obligations under this Agreement without consent.  This Agreement is the complete and exclusive statement of the mutual understanding of the parties and supersedes and cancels all previous written and oral agreements, communications and other understandings relating to the subject matter of this Agreement, and that all waivers and modifications must be in a writing signed by both parties, except as otherwise provided herein.  No agency, partnership, joint venture, or employment is created as a result of this Agreement and Customer does not have any authority of any kind to bind Company in any respect whatsoever.  In any action or proceeding to enforce rights under this Agreement, the prevailing party will be entitled to recover costs and attorneys' fees.  All notices under this Agreement will be in writing and will be deemed to have been duly given when received, if personally delivered; when receipt is electronically confirmed, if transmitted by facsimile or e-mail; the day after it is sent, if sent for next day delivery by recognized overnight delivery service; and upon receipt, if sent by certified or registered mail, return receipt requested.  This Agreement shall be governed by the laws of the State of Georgia without regard to its conflicts of law provisions.