**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | |
|---|---|
| CARD ISLE CORPORATION, | |
| Plaintiff, | |
| v. | Civil Action No. 7:20-cv-00708-MFU |
| TARIQ FARID; EDIBLE ARRANGEMENTS, LLC; and NETSOLACE, INC., | |
| Defendants. | |

## PLAINTIFF CARD ISLE CORPORATION'S CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS OR IN THE ALTERNATIVE FOR TRANSFER OF VENUE

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................3

ARGUMENT .............................................................................................................7

I.    Card Isle sufficiently alleges that venue is proper in the Western District of Virginia .......................................................................................................7

II.   Venue-selection clauses in tangential non-disclosure agreements do not apply here .....................................................................................................13

III.  This Court has personal jurisdiction over Mr. Farid....................................16

     A.  Legal Standard ...................................................................................16

     B.  Personal jurisdiction over Mr. Farid comports with Due Process because he purposefully availed himself of the privilege of conducting business in Virginia...........................................................17

CONCLUSION..........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*5EI, LLC v. Take Action Media, Inc.*,
No. 1:12CV492 JCC/TRJ, 2012 WL 4105131 (E.D. Va. Sept. 17, 2012) ...................3, 19, 21

*Ademiluyi v. Nat'l Bar Ass'n*,
No. GJH-15-02947, 2016 WL 4705536 (D. Md. Sept. 8, 2016) .......................................11, 12

*Albemarle Corp. v. AstraZeneca UK Ltd.*,
628 F.3d 643 (4th Cir. 2010) ............................................................................................14, 15

*Bright Imperial Ltd. v. RT MediaSolutions, S.R.O.*,
No. 1:11-CV-935–LO–TRJ, 2012 WL 1831536 (E.D. Va. May 18, 2012) ...........................19

*Columbia Briargate Co. v. First Nat'l. Bank*,
713 F.2d 1052 (4th Cir. 1983) ...........................................................................................18, 19

*Combs v. Bakker*,
886 F.2d 673 (4th Cir. 1989) ...................................................................................................17

*Earthkind, LLC v. The Lebermuth Co.*,
No. 5:19-CV-00051-KDB-DCK, 2020 WL 1815903 (W.D.N.C. Apr. 9 2020) ....................15

*Edwards v. Schwartz*,
378 F. Supp. 3d 468 (W.D. Va. 2019) ...............................................................................16, 17

*English Boiler & Tube, Inc. v. Glex Inc.*,
No. 3:12CV88-DJN, 2012 WL 2131895 (E.D. Va. June 12, 2012) ........................................20

*Grayson v. Anderson*,
816 F.3d 262 (4th Cir. 2016) ...................................................................................................17

*Int'l Shoe Co. v. Wash.*,
326 U.S. 310 (1945)..................................................................................................................17

*Jenkins Brick Co. v. Bremer*,
321 F.3d 1366 (11th Cir. 2003) ...............................................................................................12

*Loeb v. Bank of Am.*,
254 F. Supp. 2d 581 (E.D. Pa. 2003) .......................................................................................12

*Mitrano v. Hawes*,
   377 F.3d 402 (4th Cir. 2004) ............................................................................. *passim*

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ...................................................................................................13

*Potomac Auto Mall Holdings, Inc. v. Blue Clover Fin., LLC*,
   No. 1:20-cv-865, 2020 WL 6946599 (E.D. Va. Nov. 24, 2020) ...........................17

*River Cmty. Bank, N.A. v. Bank of N.C.*,
   No. 4:14-CV-00048, 2014 WL 7240344 (W.D. Va. Dec. 18, 2014).......................21

*Schmidt v. Bartech Grp., Inc.*,
   119 F. Supp. 3d 374 (E.D. Va. 2014) ...................................................................14

*Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*,
   911 F.3d 192 (4th Cir. 2018) ...........................................................................19, 20

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*,
   682 F.3d 292(4th Cir. 2012) .................................................................................16

*UMG Recordings, Inc. v. Kurbanov*,
   963 F.3d 344 (4th Cir. 2020) ................................................................................17

*Verizon Online Servs., Inc. v. Ralsky*,
   203 F. Supp. 2d 601 (E.D. Va. 2002) ................................................................8, 11

*Werner v. Progressive Preferred Ins. Co.*,
   533 F. Supp. 2d 776 (N.D. Ohio 2008)..................................................................14

*Williams v. Microbilt Corp.*,
   No. 3:19CV085 (REP), 2019 WL 7988583 (E.D. Va. Sept. 23, 2019),
   *adopted*, No. 3:19CV85, 2020 WL 821033 (E.D. Va. Feb. 18, 2020) .....................9

*Yevak v. Nilfisk-Advance, Inc.*,
   No. 5:15-cv-05709, 2016 WL 538333 (E.D. Pa. Feb. 11, 2016)............................16

**Statutes:**

28 U.S.C. § 1391(b)(2) .............................................................................................7

**Other:**

Store List, Edible Arrangements,
   https://www.ediblearrangements.com/store-listing/ (last visited Feb. 12, 2021) ...................10

Plaintiff Card Isle Corporation ("Plaintiff" or "Card Isle"), hereby responds to and opposes Defendants Edible Arrangements, LLC ("Edible" or "Edible Arrangements"), and Netsolace, Inc.'s ("Netsolace") Renewed Motion to Dismiss for Improper Venue or in the Alternative for Transfer of Venue (ECF No. 37), and Defendant Tariq Farid's Renewed Motion to Dismiss for Lack of Personal Jurisdiction and, in the Alternative, for Improper Venue (ECF No. 39), both filed on February 1, 2021.  For the reasons set forth herein, both Motions should be denied.

## PRELIMINARY STATEMENT

This is a lawsuit by a small Blacksburg, Virginia business about the theft of trade secrets and intellectual property that it creates, stores, and services from its Blacksburg headquarters. Plaintiff Card Isle entered a contract with Defendant Edible Arrangements, which Card Isle negotiated and executed in Blacksburg, under which Card Isle developed a personalized greeting-card product from its Blacksburg headquarters, deployed the product to Edible franchises, including franchises operating throughout Virginia and this District, and continued to service the product from its Blacksburg headquarters.  Defendants, acting under the direction of their common control person, Defendant Tariq Farid, then misappropriated Card Isle's proprietary technology, taken from Card Isle's servers housed in Virginia, and launched a copied and competing product. Defendants deployed their copied product in Edible's franchises throughout Virginia and this District, and thereby terminated Card Isle's contracts to provide its products and services to these Virginia franchises.

Defendants thus entered a contract with a Blacksburg, Virginia Plaintiff, under which Plaintiff performed the entirety of the contract in Blacksburg, and, in violation of the contract, Defendants stole Plaintiff's proprietary technology and took over Plaintiff's contracts with customers in Virginia and this District.  In response to Defendants' unlawful scheme, Card Isle

brought suit in the district in which it founded and operates its business and in which the Defendants' illegal activities occurred, the Western District of Virginia. Now, despite their illegal activities in and directed towards Virginia and a Virginia business, the out-of-state Defendants seek to escape litigating this case before a Virginia court. Their attempt to do so should be rejected.

First, Defendants argue that venue is improper before this Court because "none of the 'events or omissions' that actually give rise to the claims occurred here." *See* Edible Arrangements and Netsolace's Brief in Support of Renewed Motion to Dismiss, ECF No. 38, at 4 (hereinafter "Defendants Brief"). This claim is not true. Card Isle's Amended Complaint sets forth ample detail of the events in this District supporting its claim, including negotiations and execution of the relevant contract in this District, performance of the contract in this District, deployment of the relevant product to stores in this District, and damages flowing from Defendants' deployment of their copied product in this District. Under Fourth Circuit case law, these events are sufficiently substantial to support venue in this Court.

Next, Defendants argue that forum-selection clauses in non-disclosure agreements ("NDAs") require venue in the Northern District of Georgia. Defs. Brief 10-11. This also is not true. The NDA with Edible was "*superseded*" in its entirety by a later agreement, the Services Agreement at the heart of this case, which became the "*exclusive*" understanding between the parties and "*cancelled*" all previous agreements. The superseded NDA is not operative and its forum-selection provision is inapplicable. The NDA with Netsolace is similarly inapplicable. That NDA was designed to maintain confidentiality of Card Isle's information for a product demonstration and while Defendants preliminarily evaluated Card Isle's products. The claims here arise from the theft of trade secrets, in violation of a completely different Services Agreement, which occurred long after Defendants evaluated Card Isle's products. Defendants cannot rely on

a peripheral NDA to deny a party venue in any and all future disputes, no matter how disconnected to the NDA or the obligations and relationships created thereunder.

Finally, Defendant Farid argues that the Court lacks personal jurisdiction over him because the Amended Complaint fails to allege any fact about him that "occurred in, or was even directed to, Virginia." *See* Defendant Tariq Farid's Brief in Support of Renewed Motion to Dismiss, ECF No. 40, at 3 (hereinafter, "Farid Brief"). This is erroneous. The Amended Complaint makes clear that Mr. Farid, in addition to personally executing the relevant contract with Card Isle, directed and controlled the corporate Defendants' activities in and towards Virginia. Mr. Farid's direction of the corporate Defendants' Virginia-based conduct, over whom Defendants do not challenge jurisdiction, shows that he purposefully availed himself of the privileges of doing business in Virginia. Personal jurisdiction is proper.

Defendants stole intellectual property and Virginia-based customers from a small business founded and operated in Virginia. "Virginia has a significant interest in adjudicating this dispute regarding alleged harm to a Virginia company," and the Virginia courts are the proper forum to hear these claims, in accordance with Virginia's "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *5EI, LLC v. Take Action Media, Inc.*, No. 1:12CV492 JCC/TRJ, 2012 WL 4105131, at *8 (E.D. Va. Sept. 17, 2012). Defendants' attempt to avoid this Court hearing this lawsuit should be denied.

## BACKGROUND

Card Isle offers online retailers various personalized greeting-card products and services. Am. Compl. ¶¶ 1, 9. Specifically, Card Isle provides online retailers the coding systems, infrastructure, and support to easily design, order, and print personalized greeting cards through

the retailer's website.  *Id.* ¶ 16.  Card Isle develops and services all of its proprietary technology and products from its headquarters in Blacksburg, Virginia.  *Id.* ¶¶ 9, 16.

As its business grew, an Edible Arrangements franchisee approached Card Isle about using its greeting-card products in its store.  *Id.* ¶¶ 1, 24.  To expand its business to Edible franchisees, however, Card Isle was required to establish a business relationship with the corporate franchisor, Edible Arrangements.  *Id.* ¶¶ 1, 24.  On May 16, 2019, Card Isle presented a sales pitch to Edible representatives over video chat from its Blacksburg headquarters.  *Id.* ¶ 25.  After the pitch, Card Isle was invited to an in-person meeting in Atlanta, Georgia to demonstrate its products.  *Id.*

On May 20, 2019, in advance of the product demonstration, Card Isle executed non-disclosure agreements with Edible Arrangements and Netsolace.  *Id.* ¶ 26.  The purpose of the NDAs was to maintain the confidentiality of Card Isle's information for the product demonstration and while Defendants evaluated Card Isle's products.  *Id.*

On May 30, 2019, Card Isle's co-founders met Tariq Farid for a breakfast meeting in North Carolina, to discuss the business relationship with Edible.  *Id.* ¶ 32.  Mr. Farid is the founder of Edible Arrangements, LLC and the CEO of Edible Brands, LLC, the parent company of Edible Arrangements, LLC.  *Id.* ¶ 10.  Mr. Farid is also President and Director of Netsolace, Inc.  *Id.*  Mr. Farid controls and directs the activities of these companies.  *Id.*

During the breakfast meeting, Mr. Farid sought to steer the conversation to a discussion of the price at which he could purchase Card Isle  *Id.* ¶ 32.  Card Isle's co-founders indicated they were not interested in selling their business to Mr. Farid, but would like to continue their integration partnership with Edible.  *Id.*  Mr. Farid thereafter made statements that he had the ability to build Card Isle's product himself if he could not purchase Card Isle.  *Id.*

Following this breakfast meeting, the parties continued negotiations towards a services agreement.  On June 3, 2019, Card Isle provided Edible and Netsolace access to the proprietary technology and intellectual property housed on Card Isle's servers in Virginia.  *Id.* ¶ 33.

On October 10, 2019, Card Isle and Edible executed the Services Agreement, under which Card Isle agreed to provide the infrastructure and support to Edible's franchises to sell Card Isle's products at their stores.  *Id.* ¶ 37.  The Services Agreement specifically prohibited Edible from directly or indirectly reverse engineering, decompiling, or otherwise attempting to discover the source code, know-how, or algorithms relevant to Card Isle's products and technology.  *Id.* ¶ 41.  The Agreement further prohibited Edible from creating any derivative works based on Card Isle's products and technology.  *Id.*  The Services Agreement became the "complete and exclusive statement of the mutual understanding of the parties," it "supersede[d] and cancel[ed] all previous written and oral agreements, communications, and other understandings relating to the subject matter of [the] Agreement," thereby becoming the sole agreement governing the terms and conditions of Card Isle and Edible Arrangement's business relationship relating to Card Isle's proprietary technology and intellectual property.  *Id.* ¶ 44.

Between October 16, 2019 and May 18, 2020, approximately 73 Edible franchises, representing 106 unique store locations, signed Franchisee Services Agreements with Card Isle and began selling Card Isle's products in their stores, including franchises operating in this District and throughout Virginia.  *Id.* ¶ 46.

In January 2020, Edible and Card Isle executed an Addendum to the Services Agreement, under which Card Isle would offer a new personalized vase insert product to Edible's franchisees under the Services Agreement.  *Id.* ¶ 49.  Under the Addendum, Card Isle agreed to waive all web integration development fees, estimated at $45,000, in exchange for Edible Arrangements meeting

certain milestones in signing up Edible franchises to use Card Isle's products and services.  *Id.* ¶ 51.  If the milestones were not met, Edible agreed to pay the $45,000 fee to Card Isle.  *Id.* ¶ 52.

In March 2020, Edible attempted to renegotiate the terms of the Services Agreement.  *Id.* ¶ 57.  Edible demanded certain licenses to Card Isle's product, a right of first refusal to purchase Card Isle's business, and an equity stake in Card Isle.  *Id.* ¶ 58.  In April 2020, Card Isle rejected Edible's demands.  *Id.* ¶ 59.  In response, Edible "paused" further work with Card Isle.  *Id.* ¶ 60.

On May 19, 2020, Edible informed Card Isle that it was putting a "hold" on the business relationship and that further work under the Services Agreement would be halted.  *Id.* ¶ 65.  The following day, Edible notified Card Isle that it was terminating the Services Agreement.  *Id.* ¶ 66.  Edible failed to meet the milestone requirements under the Addendum to the Services Agreement, and never paid the required $45,000.00 fee.  *Id.* ¶¶ 67-71.  Edible's wrongful termination of the Services Agreement ended Card Isle's contracts and business relationships with dozens of Edible franchises, including Edible stores located in Virginia and this District.  *Id.* ¶ 72.

In October 2020, Edible Arrangements launched its own greeting-card product.  *Id.* ¶¶ 6, 73.  Edible's new product was a complete replica of the Card Isle greeting-card product.  *Id.* ¶¶ 75-78.  In fact, Defendants created the new product by reverse engineering and misappropriating the proprietary technology that Card Isle shared with Defendants and which was protected from such reverse engineering and misappropriation under the Services Agreement.  *Id.* ¶¶ 74-80.  Defendants then replaced all Card Isle products used by Edible franchises, including franchises in Virginia and this District, with its own new product that copied Card Isle technology in violation of its contractual obligations and applicable trade secrets and copyright laws.  *Id.* ¶¶ 80-81.

Based on the foregoing, Card Isle brought suit in this Court against Edible Arrangements for breach of the Services Agreement and against all Defendants for misappropriation of trade secrets and copyright infringement. *Id.* ¶¶ 83-119.

## ARGUMENT

The Amended Complaint sufficiently alleges that a substantial part of the events giving rise to Card Isle's claims occurred in this District and further that Mr. Farid, both individually and through his control over the corporate Defendants, purposefully availed himself of the privileges of conducting business in Virginia. The peripheral non-disclosure agreements under which Defendants seek to transfer this case from this District are inapplicable here. Accordingly, venue is proper and jurisdiction is constitutionally reasonable in this Court.

### I. Card Isle sufficiently alleges that venue is proper in the Western District of Virginia

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). In "determining whether events or omissions are sufficiently substantial to support venue . . ., a court should not focus only on those matters that are in dispute or that directly led to the filing of the action," but "[r]ather, it should review the entire sequence of events underlying the claim." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (internal quotation marks omitted). The Amended Complaint plainly alleges a sequence of substantial events occurring in this District, and venue before this Court is proper.

The Amended Complaint alleges:

- Card Isle is headquartered in Blacksburg, Virginia. Am. Compl. ¶ 9.

- Card Isle's first meeting with Defendants was via video chat from its headquarters in Blacksburg, Virginia. *Id.* ¶ 25.

- Card Isle created and developed the proprietary technology at issue in this lawsuit at its headquarters in Blacksburg, Virginia. *Id.* ¶¶ 31, 33

- During business negotiations, Edible Arrangements deployed a trial of Card Isle's product at franchises operating in this District.  *Id.* ¶ 30.

- Card Isle executed the contract at issue in this lawsuit from its headquarters in Blacksburg, Virginia.  *Id.* ¶¶ 37-38.

- Card Isle negotiated the contract via telephone and email from its headquarters in Blacksburg, Virginia.  *Id.* ¶ 40.

- Card Isle performed all services and developed all products required under the contract from its Blacksburg, Virginia headquarters.  *Id.* ¶ 39.

- Card Isle executed all agreements with Edible franchisees, including franchises located in this District, from its headquarters in Blacksburg, Virginia.  *Id.* ¶ 46.

- Edible Arrangements franchises operating in this District began using Card Isle's technology and products in their stores.  *Id.* ¶ 46.

- Card Isle executed the Addendum to the contract with Edible from its headquarters in Blacksburg, Virginia, and Card Isle created and developed the product required under the Addendum from its headquarters in Blacksburg, Virginia.  *Id.* ¶¶ 49-50.

- Edible's breach of its contract with Card Isle terminated Card Isle's relationships with Edible franchises operating in this District.  *Id.* ¶ 72.

- Defendants unlawfully deployed their copied product to Edible franchises located in this District and caused Card Isle to lose business relationships and sales from franchises operating in this District.  *Id.* ¶¶ 81, 98.

Card Isle thus alleges significant acts occurring in this District related to the proprietary technology and products at issue, the central contract between the parties, performance under the contract, Edible franchises' use of Card Isle's proprietary technology and products, and Defendants' stealing of Card Isle's business from such franchises and thus causing injury in this District.  This is more than sufficient to establish that a substantial part of the "entire sequence of events underlying the claim[s]" occurred in this District.  *Mitrano*, 377 F.3d at 405; *see also Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 623 (E.D. Va. 2002) (finding venue proper where Michigan defendants sent millions of spam emails from Michigan but which were routed through plaintiff's servers located in Virginia, and recognizing that "[s]everal courts have looked to the situs of the

injury in a tort claim in evaluating venue"); *Williams v. Microbilt Corp.*, No. 3:19CV085 (REP), 2019 WL 7988583, at *20-21 (E.D. Va. Sept. 23, 2019), *adopted*, No. 3:19CV85, 2020 WL 821033 (E.D. Va. Feb. 18, 2020) (finding venue proper, in part, because "[t]hree Plaintiffs also reside in Virginia, where they sustained the harm from Defendants' allegedly unlawful conduct").

The Fourth Circuit's decision in *Mitrano* is instructive.  There, the plaintiff was an attorney who performed part of his legal services for his out-of-state client, the defendant, in the Eastern District of Virginia.  *Mitrano*, 377 F.3d at 404.  The plaintiff brought a breach-of-contract action against the client for failure to pay for the services, and the client moved to dismiss for improper venue.  *Id.*  The district court initially agreed, reasoning that "Massachusetts, rather than Virginia, was the proper venue because: (1) the contract was formed in Massachusetts; (2) the negotiations leading to the formation of the contract were held in Massachusetts; (3) the contract contemplated that services would be performed in Massachusetts or France; (4) actual performance of the contract occurred, in part, in Massachusetts; and (5) the alleged breach of the contract (failure to make payments) took place in Massachusetts."  *Id.*

The Fourth Circuit reversed.  Despite the foregoing events occurring out of state, the Fourth Circuit reasoned that because the contract was performed mostly in the Eastern District of Virginia, even though the contract contemplated performance elsewhere, this performance was sufficiently substantial for purposes of venue.  *Id.* 405-06 ("we conclude that [plaintiff]'s work under the contract constituted 'a substantial part of the events [and] omissions giving rise to [plaintiff's] claim' for breach of contract.").  Because "it was [plaintiff's] work that allegedly created his entitlement to the payment he now seeks," the court explained, "depending on the amount of work that [plaintiff] completed in the Eastern District, that work alone may be sufficient to justify venue there."  *Id.* at 406.

Like *Mitrano*, Card Isle's performance under the Services Agreement in this District justifies venue here for claims arising out of that contract and the relationships thereunder. In fact, the events occurring in this District are far more substantial than in *Mitrano*, as Card Isle's performance occurred entirely in this District, whereas the performance in *Mitrano* was split between two different states.

Defendants try to distinguish *Mitrano*, arguing that, there, the venue itself was crucial to the underlying work—because, according to Defendants, the "defendant hired a Virginia lawyer to perform legal work in Virginia"—whereas here Card Isle's location was "irrelevant" to its contractual performance which "was to occur at franchise locations across the country." Defs. Brief at 9. This is unfounded. First, Defendants' point rests on an incorrect predicate—the *Mitrano* contract did not require that the legal work be performed in Virginia. As the court explained, the contract contemplated that performance would take place in Massachusetts or France and the plaintiff ultimately performed part of the services in Massachusetts. *Mitrano*, 377 F.3d at 404. The venue in the Eastern District of Virginia was therefore not critical to the contract or underlying work. Second, Defendants' contention that venue here was irrelevant because performance was to occur at franchises across the country omits that (1) many of these franchises are located in this District,[1] (2) Card Isle is headquartered in this District and it was thus obvious it would perform the contract here, and (3) performance in fact did occur here.

Next, Defendants argue that, unlike *Mitrano*, Card Isle's conduct in this District does not give rise to any of its claims. Defs. Brief at 9. Defendants misconstrue the allegations. Card Isle's breach-of-contract claim is premised on its performance (1) developing the proprietary technology

---

[1] A search of Edible's website reveals 39 franchises operating in Virginia, including one in Roanoke and one in Blacksburg. *See* Store List, Edible Arrangements, https://www.ediblearrangements.com/store-listing/ (last visited Feb. 12, 2021).

and products for Edible (from its headquarters in this District); (2) deploying its products to Edible franchises (operating in this District); and (3) continuing to service those products and franchises (from its headquarters in this District). Am. Compl. ¶¶ 3l, 33, 39, 46-47, 49-50. Edible breached the agreement by, for example, misappropriating Card Isle's technology, cancelling the contract without cause, and failing to pay the requisite $45,000 fee for services rendered. *Id.* ¶¶ 89-92. Card Isle fulfilling its share of the bargain, by carrying out the contractual services in this District, is a necessary component of its contract claim, just as in *Mitrano*. Further, Card Isle's contract claim is premised on damages flowing from conduct in this District, i.e., Edible terminating Card Isle's business relationships with franchises in this District and deploying its copied product to take over those customers.

Defendants' remaining arguments against venue in this Court also fail. First, Defendants claim that Card Isle's allegations of events in this District amount to merely alleging that it resides here, which does not justify venue. Defs. Brief at 7. This contention ignores swaths of the Amended Complaint regarding, as set forth above, Card Isle's performance of the contract here and Defendants deploying their illegally copied product in this District and thus causing Card Isle's injury here. *See Verizon Online Servs.*, 203 F. Supp. 2d at 623 (noting that "[s]everal courts have looked to the situs of the injury in a tort claim in evaluating venue").

Defendants' reliance on cases finding residency alone insufficient for venue are likewise misplaced as those decisions involve little or no events occurring in the forum. *Ademiluyi v. National Bar Association*, No. GJH-15-02947, 2016 WL 4705536 (D. Md. Sept. 8, 2016), involved tort claims against Florida residents for allegedly drugging and raping the plaintiff at a hotel in Florida. *Id.* at *1. The court found that venue in Maryland was not proper because "*none* of the relevant conduct occurred in Maryland." *Id.* *2-3 (emphasis added). Indeed, the *Ademiluyi* court

11

distinguished that case from *Mitrano* because "*Mitrano* dealt with a breach of contract action in which some, but not all, of plaintiff's legal work for defendant was conducted in the forum state." *Id.* at *3. Here, in sharp contrast, Card Isle performed all of the work under the contract in the Western District of Virginia.

Likewise, in *Loeb v. Bank of America*, 254 F. Supp. 2d 581 (E.D. Pa. 2003), the plaintiff "allege[d] only that he received correspondence and telephone calls in the district," which coupled with allegations that plaintiff felt economic "impact" in the forum (i.e., an in-forum resident having paid fees to defendants from out-of-state accounts to out-of-state accounts), was insufficient to justify venue. *Id.* at 584-85, 587. Here, the allegations of events in this District, including full performance of the central contract and actual damages related to in-forum Edible franchises, are far more substantial than mere communications and some intangible economic impact.

Finally, Defendants argue that the venue analysis must focus only on the defendants' conduct, not the plaintiff, and that the Amended Complaint alleges no acts by Defendants in this District. Defs. Brief at 8 (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003)). First, the Fourth Circuit disagrees. *Mitrano* found venue appropriate based exclusively on the plaintiff's performance of a contract in the forum. 377 F.3d at 406 ("depending on the amount of work that [plaintiff] completed in the Eastern District, that work alone may be sufficient to justify venue there."). Second, Defendants are simply wrong as to the absence of allegations regarding their own conduct, as they ignore the allegations that Defendants deployed their illegally copied product to Edible franchises in this District and terminated Card Isle's contracts and relationships with those franchises in this District. Am. Compl. ¶¶ 72, 81.

## II.   Venue-selection clauses in tangential non-disclosure agreements do not apply here

Defendants argue that, if not dismissed, this case should be transferred to the Northern District of Georgia under forum-selection clauses found in two non-disclosure agreements between Card Isle and Edible Arrangements and Netsolace.  Defs. Brief at 10.  Defendants primarily argue that the forum-selection clauses are not invalid under the factors set forth in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), and that the Court must therefore enforce these provisions.  Defs. Brief at 10-11.  This misses the point, however.  The Court need not address the issue of validity because neither NDA nor their forum-selection clauses apply to this lawsuit in the first place.

As to the NDA between Card Isle and Edible Arrangements, it was cancelled and superseded by the Services Agreement, the contract at the heart of this case, and the inoperative NDA and its forum-selection provision are thus inapplicable here.  Card Isle entered the NDA with Edible in May 2019.  Am. Compl. ¶ 26.  Card Isle and Edible then entered the Services Agreement in October 2019.  *Id.* ¶ 37.  By its own terms, the Services Agreement became the "*complete and exclusive* statement of the mutual understanding of the parties."  *Id.* ¶ 44 (emphasis added).  Further, the Services Agreement "'*supersede[d] and cancel[ed] all previous written and oral agreements*, communications, and other understandings relating to the subject matter of [the] Agreement."  *Id.* (emphasis added).  The Services Agreement contains no forum-selection clause.

Thus, after the NDA, Card Isle and Edible negotiated a different agreement, agreed that it replaced all other agreements and became the exclusive understanding between the parties, and further agreed that their new agreement would not include a forum-selection provision limiting lawsuits to Georgia.  It is this subsequent Services Agreement that "formed the heart of Card Isle and Edible Arrangement's business relationship relating to Card Isle's proprietary technology and intellectual property," and serves as the basis for Card Isle's breach-of-contract claim.  Am. Compl.

13

¶¶ 44, 89-92.  It is therefore the operative Services Agreement, not the superseded NDA, that applies to Card Isle's claims against Edible Arrangements.  Because the Services Agreement contains no forum-selection clause, there is no basis to transfer this case to the Northern District of Georgia.  *See Schmidt v. Bartech Grp., Inc.*, 119 F. Supp. 3d 374, 383 (E.D. Va. 2014) (courts should not "make the contract speak where it was intended to be silent"); *Werner v. Progressive Preferred Ins. Co.*, 533 F. Supp. 2d 776, 781 (N.D. Ohio 2008) (the court "must take great care that it does not make the contract speak where the parties by neglect or design left it silent").

Defendants suggest that the Services Agreement does not supersede the NDA's venue clause because the supersession is limited only to matters "relating to the subject matter of [the] Agreement," and the "venue clause [] was not the subject of the subsequent agreement."  Defs. Brief at 12.  The Court should reject this unreasonably narrow view, which would require the Court to read out of the Services Agreement the clear language establishing it as "the complete and exclusive statement of the understanding of the parties."  The Services Agreement broadly governs the business relationship between Edible and Card Isle.  In addition, the Services Agreement is clear that it became the "complete and exclusive" understanding between the parties.  Enforcing a forum clause from a different agreement, in contradiction to the parties' agreement not to include a venue provision in the Services Agreement, would violate this exclusivity provision.

*Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643 (4th Cir. 2010), cited by Defendants, is off base.  There, the court found that a venue clause in a 2005 contract applied to a dispute under that contract despite a later 2008 contract providing that the 2005 agreement would have no further force or effect.  Notably, the relevant lawsuit was based on a breach of the earlier contract and *the suit was filed before the later contract was ever created.  Id.* at 646.  The court also found relevant the 2008 contract's use of forward-looking language — that earlier contracts

14

would have no "further" effect — which the court found did not displace claims arising before the 2008 agreement, including the already pending litigation at issue. *Id*. at 648.  Here, Card Isle's breach-of-contract claim is based exclusively on violations of the Services Agreement, is based on conduct that occurred after the Services agreement "superseded and cancelled" the NDA, and includes no language limiting the agreement's applicability, especially to prospective claims.

As to the NDA between Card Isle and Netsolace, it simply does not govern Card Isle's claims against Netsolace.  The purpose of the NDA, and the relationship between the parties covered by the NDA, was limited to maintaining the confidentiality of each parties' information while Defendants evaluated Card Isle's product.  Am. Compl. ¶ 26.  The parties completed this initial evaluation at some point before October 2019, at which point Edible and Card Isle entered the Services Agreement for Card Isle to provide its product to Edible franchises. *Id.* ¶ 37.

Card Isle is not suing Netsolace for disclosing confidential information in breach of the NDA nor for violation of any obligations created under the NDA.  Rather, Card Isle's claims arise from Netsolace's subsequent use of Card Isle's proprietary and copyrighted technology to create a competing product and deploy that copied product in the marketplace. *Id.* ¶ 94-119.  A peripheral NDA related to Netsolace's past evaluation of Card Isle's products should not govern the statutory claims here for Netsolace's subsequent misappropriation of trade secrets and copyright infringement. *See Earthkind, LLC v. The Lebermuth Co.*, No. 5:19-CV-00051-KDB-DCK, 2020 WL 1815903, at *16 (W.D.N.C. Apr. 9 2020) ("[M]erely because the parties may have spoken to each other pursuant to a confidentiality agreement, that does not mean that any claim that arises between the parties from these communications must be governed by the agreement."); *Yevak v. Nilfisk-Advance, Inc.*, No. 5:15-cv-05709, 2016 WL 538333, at *8 (E.D. Pa. Feb. 11, 2016) (finding forum-selection clause in employee confidentiality agreement inapplicable to workplace-

discrimination lawsuit, reasoning that while "[t]he lawsuit does relate to Plaintiff's employment, [] Plaintiff's employment is not the same thing as Plaintiff's employment agreement").[2]

## III.   This Court has personal jurisdiction over Mr. Farid

Mr. Farid's contacts with Virginia, including through his companies acting at his direction and control, give rise to Card Isle's claims and demonstrate that Mr. Farid purposefully availed himself of the privilege of conducting activities in Virginia. The Court's exercise of personal jurisdiction over Mr. Farid is constitutionally sound.

### A.   Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute permits the exercise of jurisdiction, and (2) the exercise of such jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 488 (W.D. Va. 2019).   Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by due process, "the two-prong test collapses into a single inquiry when Virginia is the forum state.  A Virginia court thus has jurisdiction over a nonresident defendant if the exercise of such jurisdiction is consonant with the strictures of due process." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301-02 (4th Cir. 2012).

To satisfy due process requirements, the defendant must have sufficient minimum contacts with Virginia so as not to offend "traditional notions of fair play and substantial justice." *Edwards*, 378 F. Supp. 3d at 488. (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).  The Fourth

---

[2] Defendants also argue that the Court's purported lack of personal jurisdiction over one Defendant, Tariq Farid, counsels in favor of transfer.  Defs. Brief at 13-14.  As discussed below, there are no jurisdictional issues as to Mr. Farid and, in event, dismissal of Mr. Farid should not prevent Card Isle from pursuing its claims in this forum against Edible and Netsolace, over whom the Court undoubtedly has jurisdiction.

Circuit has integrated the due process requirements into a three-part test: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) (citations omitted).

Where the Court decides a pretrial motion to dismiss for lack of personal jurisdiction by reviewing only the parties' pleadings, motion papers, affidavits, and supporting legal memoranda, a plaintiff need only make a *prima facie* showing of personal jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). The Court "must construe all relevant . . . allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Potomac Auto Mall Holdings, Inc. v. Blue Clover Fin., LLC*, No. 1:20-cv-865, 2020 WL 6946599, at *3 (E.D. Va. Nov. 24, 2020) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

### B. Personal jurisdiction over Mr. Farid comports with Due Process because he purposefully availed himself of the privilege of conducting business in Virginia

The Amended Complaint alleges ample facts regarding Mr. Farid's contacts with Virginia and demonstrates that he purposefully availed himself of the privilege of conducting business here. For instance, the Amended Complaint alleges:

- Mr. Farid directed and controlled Edible Arrangements' and Netsolace's unlawful misappropriation and use of Card Isle's intellectual property and copyrighted material, giving rise to Card Isle's claims and injuries.[3] Am. Compl. ¶ 10.

- During business negotiations with Card Isle, Edible, at the direction of Mr. Farid, deployed a trial of Card Isle's product at Edible franchises operating in Virginia. *Id.* ¶ 30.

---

[3] Defendants do not challenge whether this Court has personal jurisdiction over Edible Arrangements or Netsolace, and do not refute the allegation that Mr. Farid directed the unlawful activity at issue.

- Mr. Farid executed the contract at the heart of this case, the Services Agreement between Edible Arrangements and Card Isle, which facilitated, among other things, Edible franchises operating in Virginia using the products and services that Card Isle provides from its headquarters in Virginia. *Id.* ¶¶ 37-39.

- At Mr. Farid's direction, Edible Arrangements breached the Services Agreement, terminating the contracts and business relationships between Card Isle and Edible franchises operating in Virginia. *Id.* ¶ 72.

- At Mr. Farid's direction, Edible Arrangements deployed Defendants' copied and competing product in its franchises operating throughout Virginia, thus causing unlawful competition with Card Isle throughout Virginia and causing Card Isle to lose sales with Edible franchises operating in Virginia. *Id.* ¶¶ 81, 98, 107.

Mr. Farid's personal involvement and control over his corporate Defendants' actions in Virginia are sufficient to establish the minimum contacts needed for personal jurisdiction. The Fourth Circuit has explained that if a non-resident corporate agent "has a direct personal involvement in a tort committed in the forum state, the agent is subject to jurisdiction in that state under its long-arm statute." *Columbia Briargate Co. v. First Nat'l. Bank*, 713 F.2d 1052, 1064 (4th Cir. 1983) (internal quotation marks omitted). Jurisdiction is appropriate where there is "some showing of direct, personal involvement by the corporate officer in some decision or action which is causally related to the plaintiff's injury," such as "where the defendant [agent] was the guiding spirit behind the wrongful conduct . . . or the central figure in the challenged corporate activity." *Id.* at 1063 (internal quotation marks omitted).

For example, in *Bright Imperial Ltd. v. RT MediaSolutions, S.R.O.*, No. 1:11-CV-935-LO-TRJ, 2012 WL 1831536 (E.D. Va. May 18, 2012), the court found that a foreign corporate director who had never stepped foot in Virginia was subject to personal jurisdiction because he was "directly involved in and responsible for decisions that Plaintiff alleges amount to tortious conduct. . . . His actions had a direct causal connection with the alleged tort, and he, just as the corporate Defendants, should have foreseen that these actions were sufficient to subject him to

accountability." *Id.* at *12 ("[I]t would be illogical to permit jurisdiction over a corporation for a tortious act committed abroad but which caused harm here, and at the same time allow the individual allegedly responsible for each of the injurious decisions to escape the grasps of this Court's judicial authority."); *see also 5EI, LLC v. Take Action Media, Inc.*, No. 12-492, 2012 WL 4105131, at *9 (E.D. Va. Sept. 17, 2012) (finding personal jurisdiction over individual founders of corporate defendant because they had "'direct personal involvement'" and were the "'guiding spirit[s]' behind the wrongful conduct") (quoting *Columbia Briargate*, 713 F.2d at 1063). Here, Mr. Farid was the "guiding spirit" behind his companies' wrongful conduct in Virginia and, consequently, he is subject to personal jurisdiction in Virginia courts for such conduct.

Mr. Farid argues that the Fourth Circuit's decision in *Sneha Media & Entertainment, LLC v. Associated Broadcasting Co. P Ltd.*, 911 F.3d 192 (4th Cir. 2018), counsels against a finding of personal jurisdiction. Specifically, Mr. Farid contends that the none of the eight nonexclusive factors *Sneha Media* sets forth for assessing minimal contacts apply to this case. Farid Brief at 8-9. Mr. Farid is wrong and, notably, ignores entirely his direction and control of the corporate Defendants. For example, as set forth above, (i) Defendants deliberately engaged in significant business activity in Virginia, through their relationship with Card Isle as well as the Edible franchises operating in Virginia (factor four); (ii) Mr. Farid made in-person contact with residents of Virginia, the Card Isle founders, regarding a business relationship (factor six)[4]; and (iii) the "nature, quality, and extent of the parties' communications about the business being transacted," was substantial, involving many emails and telephone calls, spanning more than a year, to and

---

[4] Contrary to Mr. Farid's interpretation, it does not matter that the in-person contact occurred outside of Virginia, so long as such contact was with a Virginia resident about conducting business with the Virginia resident. *See Sneha Media*, 911 F.3d at 198 (describing the relevant inquiry as "whether the defendant made in-person contact with a resident of the State regarding the business relationship").

from Card Isle's Virginia headquarters regarding negotiation, performance, and termination of the business relationship (factor eight). *Sneha Media*, 911 F.3d at 198.

Mr. Farid submits an affidavit with his Motion attesting to a variety of contacts he does not have with Virginia. ECF No. 40-1. This is irrelevant, as "it has never been that the contacts a party *does not* maintain in a forum determine whether an exercise of personal jurisdiction is appropriate, but rather the quality of the contacts that the party *does* establish." *English Boiler & Tube, Inc. v. Glex Inc.*, No. 3:12CV88-DJN, 2012 WL 2131895, at *6 (E.D. Va. June 12, 2012) (emphasis in original). As set forth above, Mr. Farid has had ample contacts with Virginia regarding the relevant business relationship, both individually and through his direction and control of the corporate Defendants, including deploying the copied product to Edible franchises throughout Virginia.

Mr. Farid next relies on cases holding that aiding and abetting or conspiring with others who act in Virginia is insufficient to confer personal jurisdiction over an out-of-state defendant who himself/herself does not act in or towards Virginia. Farid Brief at 10. These cases are inapposite, as none involve a defendant who, like Mr. Farid, directed and controlled the other defendants' actions in and towards Virginia. Mr. Farid's relation to Edible and Netsolace is not incidental to their conduct in Virginia, rather he directed their Virginia-based activities.

Finally, Mr. Farid argues that should the court deny his jurisdictional motion, he joins the corporate Defendants' motion to dismiss for improper venue or for transfer of venue. Farid Brief at 10-11. Because venue in this Court is appropriate, as set forth above, Mr. Farid's alternative request to dismiss or transfer venue should be denied.

In accordance with Virginia's "'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," Mr. Farid's motion to

20

dismiss should be denied. *5EI, LLC*, 2012 WL 4105131, at *8; *see also River Cmty. Bank, N.A. v. Bank of N.C.*, No. 4:14-CV-00048, 2014 WL 7240344, at *6 (W.D. Va. Dec. 18, 2014) ("Virginia has a valid interest in the resolution of the grievances of its citizens and businesses") (internal quotation marks omitted).

### CONCLUSION

For the foregoing reasons, the Court should deny Defendants Edible Arrangements and Netsolace's Motion to Dismiss for Improper Venue or in the Alternative for Transfer of Venue, and deny Defendant Tariq Farid's Motion to Dismiss for Lack of Personal Jurisdiction and, in the Alternative, for Improper Venue.

Dated: February 15, 2021

Respectfully submitted,

*/s/ Robyn Cort Quattrone*
Robyn Cort Quattrone (VA Bar No. 431)17)
Andrew L Sandler (*pro hac vice*)
Stephen LeBlanc (*pro hac vice*)
Rebecca Guiterman (*pro hac vice*)
**MITCHELL SANDLER LLC**
1120 20th Street NW, Suite 725
Washington, DC 20036
Telephone:     (202) 886-5260
rquattrone@mitchellsandler.com
asandler@mitchellsandler.com
sleblanc@mitchellsandler.com
rguiterman@mitchellsandler.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2021, I electronically filed the foregoing **Plaintiff Card Isle Corporation's Consolidated Response in Opposition to Defendants' Motions to Dismiss or in The Alternative for Transfer of Venue** with the Clerk of the Court using the CM/ECF system.

Email notifications will automatically be served by the CM/ECF system to the following counsel of record:

James K. Cowan, Jr.
Virginia State Bar No. 37163
Eric D. Chapman
Virginia State Bar 86409
CowanPerry PC
250 South Main Street, Suite 226
Blacksburg, Virginia 24060
Phone: 540-443-2850
Fax: 888-755-1450
jcowan@cowanperry.com
echapman@cowanperry.com

Jason J. Carter – Admitted Pro Hac Vice
Ga. Bar No. 141669
Solesse L. Altman – Admitted Pro Hac Vice
Ga. Bar No. 442827
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW
Suite 3900
Atlanta, GA 30309-3417
Phone: 404-881-4100
Fax: 404-881-4111
carter@bmelaw.com
altman@bmelaw.com

*Attorneys for Defendants*

Date:   February 15, 2021

*/s/ Robyn Cort Quattrone*
Robyn Cort Quattrone (VA Bar No. 43117)
Andrew L Sandler (*pro hac vice*)
Stephen LeBlanc (*pro hac vice*)

22

Rebecca Guiterman (*pro hac vice*)
**MITCHELL SANDLER LLC**
1120 20th Street NW, Suite 725
Washington, DC 20036
Telephone:      (202) 886-5260
rquattrone@mitchellsandler.com
asandler@mitchellsandler.com
sleblanc@mitchellsandler.com
rguiterman@mitchellsandler.com

*Attorneys for Plaintiff*

23